# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DAVID GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-cv-00815-JAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying David Gray's ("Gray") applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381–85.

**I.     Background**

Gray filed his applications for disability insurance benefits and supplemental security income on October 21, 2010, and December 15, 2010, respectively. (Tr. 106-07) The Social Security Administration ("SSA") denied Gray's applications on April 18, 2011. (Tr. 106-13) He filed a timely request for a hearing before an administrative law judge ("ALJ") on April 26, 2011. (Tr. 114-15) Following a hearing, the ALJ issued a written decision on March 7, 2013, upholding the denial of benefits. (Tr. 17-38) Gray requested review of the ALJ's decision by the Appeals Council. (Tr. 15-16) On February 25, 2014, the Appeals Council denied Gray's request for review. (Tr. 1-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Gray filed this appeal on April 28, 2014. (Doc. 1) The Commissioner filed an Answer. (Doc. 7) Gray filed a Brief in Support of his Complaint. (Doc. 11) The Commissioner filed a Brief in Support of the Answer. (Doc. 16)

**II.     Decision of the ALJ**

The ALJ determined that Gray meets the insured status requirements of the Social Security Act through March 31, 2015, and had not engaged in substantial gainful activity since September 30, 2010, the alleged onset date of disability. (Tr. 22) The ALJ found Gray has the severe impairments of status-post right hip surgery, bipolar disorder, stress disorder, depressive disorder, post-traumatic stress disorder, and polysubstance abuse but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23)

After considering the entire record, the ALJ determined Gray has the residual functional capacity ("RFC") to perform light work except that he should avoid ropes, ladders, and scaffolds. (Tr. 25) Further, Gray should avoid hazardous heights and extremes of heat (Id.) The ALJ also limited Gray to unskilled work. (Id.) The ALJ found Gray unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform, including unarmed security guard, cleaner, and information clerk. (Tr. 31-32) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 32) Gray appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

**III.    Administrative Record**

The following is a summary of the relevant evidence before the ALJ.

**A.     Hearing Testimony**

The ALJ held a hearing in this matter on July 17, 2012, and a supplemental hearing on January 29, 2014. The ALJ heard testimony from Gray and Gerald Belchick, a vocational expert. (Tr. 39-105)

**1.  Gray's testimony**

At the time of the first hearing, Gray was living with his wife and his four children. (Tr. 60) His children were 2, 4, 9, and 13 years old. (Id.) His wife works full time. (Tr. 61) He stays home alone with the two and four year old children. (Id.) When he has bad days, his neighbors help watch the children. (Tr. 85) Gray has a GED plus additional vocational training. (Id.) His additional vocational training is as a union journeyman carpenter. (Id.) He has not taken any classes from September 2010 to the time of the first hearing. (Id.)

Prior to his motor vehicle accident in November 2008, Gray assisted his family in some farming activities. (Tr. 61-64) However, Gray did not receive any earnings from the farming nor did he report it as work on his work history report. (Tr. 63) He worked as a valet parking attendant at Larkin Parking, as a dismantler at Craig Automotive, as an apartment maintenance man, and as an assembly worker for Paramount Headwear. (Tr. 64-65) Gray also worked as a carpenter for Harsco Corporation, Sunrise Building Company, and McBride and Son Management Company. (Tr. 65-66) For roughly four months, Gray additionally worked as a filing clerk at Atlas Reserve Temporaries. (Tr. 64, 73) Because Gray accumulated total earnings of $2,736 at that job, which is under Substantial Gainful Activity, counsel requested that the ALJ not consider it under past relevant work. (Tr. 73)

Gray's counsel indicated that Gray's non-exertional health problems are major depressive disorder, posttraumatic stress disorder, and anxiety disorder. (Tr. 69) Gray also suffered a heat stroke in 2010 resulting in complaints of cognitive difficulty and some memory difficulty. (Id.)

3

Specifically, Gray testified that he has issues with his short-term memory. (Tr. 94) Gray no longer goes outside if it is over 90 degrees. (Tr. 96)

On the exertional side, counsel stated that Gray is dealing with a traumatic hip injury that occurred as a result of a motor vehicle accident in November 2008. (Tr. 69) As for the then-current status of the hip, counsel indicated that Gray was post open reduction internal fixation and that post-imaging has shown a screw in the sciatic notch irritating the nerve. (Id.) Gray has also been diagnosed with sciatica. (Id.) Gray testified that as a result of the hip injury he has trouble walking and will occasionally need a cane. (Tr. 87-89) Specifically, Gray testified that he can walk for two hundred feet at a time. (Tr. 89) He can only stand for at most ten minutes and sit for 15 to 20 minutes. (Tr. 89-90) Gray also testified that of an eight hour day, he spends at least two hours sitting, propped, or stretched. (Tr. 93) Additionally, Gray also suffered a traumatic injury to his left hand which required tissue removal. (Tr. 71) The injury occurred when Gray was a child. (Tr. 97) Counsel indicated that as a result Gray has fine and gross manipulation limitations. (Tr. 71) Gray cannot continuously grip or hold onto something tightly with his left hand. (Tr. 98) He is also unable to type. (Tr. 98-99)

Gray testified that he used marijuana about a year prior to the first hearing and that he had been addicted to Percocet. (Tr. 68, 75)

### 2. Testimony of Vocational Expert

Vocational expert, Gerald Belchick, testified regarding Gray's vocational history as follows. Gray has been a carpenter or a home builder, code 860.381-022, with a specific vocational preparation ("SVP") of 7 and classified by the Dictionary of Occupational Titles ("DOT") as medium work. (Tr. 101-02) He also worked as a dismantler in an auto shop/junk yard, code 929.687-022, with an SVP of 2 and classified as medium work, as an apartment

maintenance person, code 899.381-010, with an SVP of 7, classified as medium work, as a file clerk, code 206.367-014, with an SVP of 2, classified as light work, in a valet parking garage, code 915.473-010, with an SVP of 2, classified as light work, as a farmer, code 421.687-010, with an SVP of 2, classified as medium work, in a customer service job, code 299.367-010, with an SVP of 3, classified as light work, and in production assembly, code 706.687-010, with an SVP of 2, classified as light work. (Tr. 102-03)

For hypothetical one, the ALJ asked Belchick to assume a person limited to light, unskilled work who should avoid ropes, ladders, scaffolding, hazardous heights, and extremes in heat. (Tr. 103) Belchick testified that Gray could return to his past relevant work as an assembler/hat decorator, as a filing clerk, and in the car part job. (Id.) Belchick further testified that there was not a conflict between the vocational evidence he provided and the information in the DOT. (Id.)

A supplemental hearing was held on January 29, 2014, to allow for additional testimony from Belchick, the vocational expert. At the supplemental hearing Belchick addressed Gray's previous work as a farmer, indicating it has a code of 860.381-022, with an SVP of 7, and classified as medium work. (Tr. 45) The ALJ again asked Belchick to assume a person limited to light, unskilled work who should avoid ropes, ladders, scaffolding, hazardous heights, and extremes in heat. (Id.) Although initially the VE indicated that Gray could not return to his past work, Belchick then indicated that Gray could do his part work as a file clerk, a valet parker, and as an assembler. (Id.)

The ALJ then asked the VE whether a hypothetical individual with the same education, vocational background, and residual functional capacity as Gray had the ability to perform at least three other additional jobs that exist in significant numbers on a regional and national level.

5

(Tr. 45-46). Belchick testified that such a person would be able to perform a job such as unarmed security guard, code 372.667-030, SVP of 2, light, unskilled work. There are 1,200 such positions locally and 81,000 positions nationally. (Tr. 46) In addition, such a person could perform the job of cleaner, code 301.474.010, SVP of 2, light, unskilled. There are 6,000 such positions locally and 420,000 nationally. (Tr. 46-47) Finally, there is an information clerk position that a person could do, code 237.367-018, SVP of 2, light, unskilled. There are 1,100 such positions locally and 72,000 nationally. (Tr. 47)

Gray's attorney asked Belchick how his opinion would be impacted if he took the first hypothetical and included the limitation of a person who could never be in the seated or standing position for longer than 15 minutes or, in other words, required alteration every 15 minutes. (Tr. 48) Belchick responded that this limitation would eliminate all of the jobs he mentioned. (Id.) Belchick then testified that such a person could work as a counselor under cashier II. (Tr. 49) Counsel then asked Belchick if a person who was required to leave a workstation, even for a couple of minutes at a time, if the position of counselor could be performed. (Id.) Belchick responded that a person with such limitations could not work as a counselor. (Id.) Belchick further testified that there are not any jobs that one could do if an individual would require lying down flat at random times, required unscheduled breaks, or would be absent two or more times a month. (Tr. 49-50)

In the supplemental hearing, Gray additionally testified that he worked as a residential tree climber for Clayton's Tree Service. (Tr. 52) Gray indicated that he apprenticed to learn the trade and that it is a high skill set job. (Tr. 52-53) Belchick testified that the DOT code for that job is 408.664-010, with an SVP of 4, and classified as heavy work. (Tr. 53)

### B.     Medical Records

The ALJ summarized Gray's medical records at Tr. 25-31. Relevant medical records are discussed as part of the analysis.

### IV.    Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation

process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the

claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. The Commissioner may refer to the Medical-Vocational Guidelines or "Grids," 20 CFR Part 404, Subpart P, Appendix 2,[1] to meet this burden. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;

---

[1] The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir. 2012). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." Id. (quoting Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)).

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In his appeal of the Commissioner's decision, Gray raises three issues. First, Gray asserts that the ALJ failed to properly weigh the medical evidence. (Doc. 11 at 11-20) Second, Gray argues that the ALJ failed to properly evaluate Gray's credibility. (Id. at 20-24) Third, Gray asserts that the ALJ relied on flawed vocational expert testimony. (Id. at 24-25) Upon review, the Court finds substantial evidence in the record to support the ALJ's decision.

### A. Medical Opinion Evidence

Gray asserts that the ALJ failed to properly weigh the treating source opinions of Dr. Jennifer Barbin ("Dr. Barbin"), his treating physician; Dr. Heather Hill ("Dr. Hill"), his treating psychiatrist; and Ms. Marilyn Coffman, LPC, MA ("Ms. Coffman"), his treating therapist. Gray also appears to dispute the ALJ's finding giving "great weight" to the opinion of Terry Dunn, Ph.D. ("Dr. Dunn"), the state agency psychiatric consultant.

A treating physician's opinion is generally entitled to substantial weight but does not automatically control. Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009) (internal quotations and citation omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." Id. In addition, treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (A physician's opinion that a claimant is "disabled" or "unable

to work" does not carry "any special significance," because it invades the province of the Commissioner to make the ultimate determination of disability). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." Andrews v. Colvin, 2014 WL 2968815, at *2 (E.D. Mo. July 1, 2014) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)).

Therapists, on the other hand, are not medical sources as defined by the Regulations. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists from the list of acceptable medical sources); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) ("A therapist is not an 'acceptable medical source' to establish 'a medically determinable impairment.' "). However, the Commissioner may also "use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." Lacroix v. Barnhart, 465 F.3d 881, 886-87 (8th Cir. 2006) (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (citing 20 C.F.R. § 416.927(d)(4)).

**1. Dr. Barbin**

First, Gray asserts that the ALJ failed to properly weigh the treating source opinion of Dr. Barbin. At issue is Dr. Barbin's opinion reported in a Multiple Impairment Questionnaire dated September 28, 2011. (Tr. 375-82) In the Questionnaire, Dr. Barbin concluded that Gray can only sit or stand/walk for a maximum of 1 hour and is unable to lift or carry more than 20lbs. (Tr. 377-378) Dr. Barbin further opined that Gray has marked limitation grasping, turning, twisting objects with his left hand, marked limitation using his fingers/hands for fine manipulations on his

left hand, and moderate limitations using his fingers/hands for fine manipulations on his right hand. (Tr. 378-379) Dr. Barbin additionally reported that Gray would need to take breaks of half an hour or longer, several times an hour. (Tr. 380) Dr. Barbin also indicated that Gray would need to avoid temperature extremes, need to avoid humidity, need to avoid heights, and could not engage in pushing, pulling, kneeling, bending, or stooping. (Tr. 381). Dr. Barbin noted that Gray's experience of pain constantly interferes with his attention and concentration. (Tr. 380)

The Court finds that the ALJ properly evaluated Dr. Barbin's opinions, listing "good reasons" for giving them little weight. Prosch, 201 F.3d at 1013. The ALJ afforded Dr. Barbin's opinion "little weight because it is neither consistent with nor supported by the evidence." (Tr. 29) In so-doing, the ALJ provided several examples from the record of the inconsistencies. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). First, the ALJ noted that Dr. Barbin asserted that Gray had moderate limitations using his fingers/hands on the right side for fine manipulations, even though claimant does not have any impairment that affects his right hand.[2] (Tr. 29) Further, as a second example, the ALJ indicated that Dr. Barbin asserted that Gray's pain, fatigue, or other symptoms are constantly severe enough to interfere with attention and concentration while also making the statement, in a treatment note, that Gray has a normal attention span and concentration. (Tr. 29-30) Third, the ALJ highlighted Dr. Barbin's statement that Gray "has done a remarkable job with attending all appointments and following physicians' recommendations." (Tr. 30) However, this statement is contradicted, as the ALJ noted, by Gray's own testimony that he had been addicted to Percocet and had some continued use of marijuana. (Id.) To the extent that Gray attempts to counter these examples with other or additional medical records, the Court finds his arguments unpersuasive.

---

[2] Gray's impairment is to his left hand.

12

The ALJ may reject the conclusions of any medical expert if they are unsupported and inconsistent with the record as a whole. See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)).

Additionally, the ALJ indicated that Dr. Barbin stated that her opinion was based on Gray's subjective report, rather than her independent medical analysis. (Tr. 30) Although Gray asserts that Dr. Barbin indicated that her opinions were supported by radiographic studies (Tr. 375-376), neither Gray nor Dr. Barbin indicate which studies support these extreme limitations. In fact, Dr. Barbin's opinion does not appear to be supported by the medical evidence. (Tr. 28-30, 385, 399, 403, 405-406, 414, 441-445, 450). Furthermore, an ALJ can give less weight to medical opinion because it appears to be based solely on claimant' subjective complaints. See Gonzales v. Barnhart, 465 F.3d 890, 896 (8th Cir. 2006).

Finally, although the ALJ did not explicitly cite to any evidence contradicting Dr. Barbin's opinion in that portion of the opinion wherein she addresses the weight given to Dr. Barbin's opinion, the ALJ presented a lengthy review of the medical evidence regarding Gray's physical impairments elsewhere in the opinion (Tr. 28) and it is Gray's burden to provide the medical evidence to establish disability, not the ALJ's. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").

**2. Dr. Hill**

Next, Gray asserts that the ALJ failed to properly weigh the treating source opinion of Dr. Hill, his treating psychiatrist. Dr. Hill diagnosed Gray with bipolar disorder, post-traumatic stress disorder, and a cognitive disorder secondary to head trauma. (Tr. 801) Dr. Hill assigned

13

Gray a global assessment of functioning ("GAF") score of 60.[3] (Id.) Dr. Hill also indicated that Gray's highest GAF score in the past year was a 65.[4] (Id.) Dr. Hill found Gray to be markedly limited in: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workweek without interruptions; the ability to interact appropriately with the general public; and the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 805-806)

The Court concludes the ALJ properly evaluated Dr. Hill's opinions, listing "good reasons" for giving them little weight. Prosch, 201 F.3d at 1013. Specifically, the ALJ afforded Dr. Hill's opinion "little weight because it is neither consistent with nor supported by the evidence." (Tr. 30) Although the ALJ does not provide specific examples of this inconsistency in her paragraph discounting the opinion of Dr. Hill, the ALJ extensively reviewed the mental impairment medical records noting that Gray's "depression is controlled by medication" and that the state agency psychiatric consultant, Dr. Dunn, found that Gray "had no restriction in activities of daily living, social functioning, as well as ability to maintain concentration, persistence, or pace, and had experienced no episodes of decompensation of extended duration."

---

[3] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994). A GAF score of 51 to 60 is "indicative of 'moderate symptoms' or 'moderate difficulty in social, occupational, or school functioning.' " Lacroix v. Barnhart, 465 F.3d 881, 883 (8th Cir.2006) (quotation omitted). In Pate–Fires v. Astrue, 564 F.3d 935, 944 (8th Cir. 2009), the Eighth Circuit found that a GAF score in the 51–60 range was not "inconsistent with [an] opinion that [the claimant] was permanently disabled for any type of employment, nor does it constitute substantial evidence supporting the ALJ's conclusion she is not disabled." Id. (citing Colon v. Barnhart, 424 F.Supp.2d 805, 813–14 (E.D.Pa.2006) ("indicating an ALJ must consider a claimant's total GAF score history, and remanding the case for reconsideration where ALJ failed to consider or discuss claimant's lowest scores[.]")).

[4] A GAF score of 61–70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM–IV 32.

(Tr. 29) Moreover, the ALJ indicated that Dr. Hill had seen Gray at most three times when Dr. Hill formed her opinions. (Tr. 30) "Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i). See also Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (holding that a doctor's opinion stated in a checklist should not have been given controlling weight because the doctor had met with the plaintiff only three times at the time he completed the form).

### 3. Ms. Coffman

Gray also asserts that the ALJ failed to properly weigh the opinion of Ms. Coffman, his treating therapist. Ms. Coffman completed a Psychiatric/Psychological Impairment Questionnaire. In the Questionnaire, Ms. Coffman opined that Gray is markedly limited in his ability to understand and remember detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workweek without interruptions; and the ability to interact appropriately with the general public. (Tr. 296-297) Ms. Coffman also provided a letter to the Commissioner in which she indicated that Gray "has a low frustration tolerance level" and "[h]is level of stress is always high." (Tr. 302) As a result of these attributes, Ms. Coffman reported that Gray "is prone to display behavior that is not customary for him" specifically, "angry outbursts." (Id.)

The Court finds that the ALJ properly evaluated Ms. Coffman's opinions. Specifically, the ALJ indicated that Ms. Coffman only examined Gray for a total of six hours. (Tr. 30, 302) Further, in addition to commenting on Gray's mental limitations, Ms. Coffman addressed Gray's physical limitations and, as the ALJ noted, Ms. Coffman has no expertise on which to base her statements. (Tr. 30, 302) Finally, as previously addressed, the ALJ provided a detailed analysis

of the medical record as it related to Gray's mental impairment and this analysis further supports the ALJ's decision to discount the opinions of Ms. Coffman. (Tr. 24, 28-31)

**4. Dr. Dunn**

Finally, to the extent that Gray asserts that the ALJ inappropriately relied on the opinion evidence of Dr. Dunn to formulate Gray's RFC, the Court finds this argument unpersuasive. Dr. Dunn opined that Gray did not have any restrictions in the activities of daily living, in social functioning, or in his ability to maintain concentration, persistence, or pace. (Tr. 29, 371) While the ALJ afforded Dr. Dunn's opinion "great weight," the ALJ's determined RFC clearly limited Gray beyond that which the opinion of Dr. Dunn would suggest, therefore indicating that the ALJ took into consideration the medical records and the opinions of Dr. Barbin, Dr. Hill, and Ms. Coffman in formulating the RFC. Importantly, assigning a medical opinion or other source opinion "little weight" is not the same as assigning that same opinion "no weight." Further, as the Court previously addressed, the ALJ gave good reasons for the weight she afforded these sources and, as the Court will address, the ALJ properly discounted Gray's subjective complaints. Accordingly, the Court finds no merit in Gray's argument that the ALJ improperly relied on the opinion evidence of Dr. Dunn.

In sum, the Court finds the ALJ's treatment of the medical opinion evidence is supported by valid reasons and substantial evidence in the record as a whole.

**B. Gray's Credibility**

Gray next argues the ALJ erred in his credibility evaluation and RFC determination by finding that his activities of daily living were inconsistent with his claims of disability. (Doc. 11 at 20-24) Deference is given to the ALJ's conclusion with regard to credibility determinations. Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009).

In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. Id. The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis, 392 F.3d at 996.

The ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 27) In so-doing, the ALJ noted that there were several indications in the record that the claimant's functional limitations may not be as severe as alleged. Specifically, the ALJ found, "[a]s discussed above on page four, the claimant engages in extensive activities, including social activities and activities of daily living, that require substantial concentration, persistence and pace." (Id.) On page four of her opinion, the ALJ details Gray's activities of daily living, specifically noting that he reported that his daily activities include "feeding his children, straightening up the house, putting away his kids' toys, doing laundry, watching television with his children, and making phone calls to pay bills." (Tr. 23) Regarding Gray's social activities, the ALJ found that Gray had no difficulties. (Id.) Gray is married, has four minor children, and has a friend with whom he visits. (Id.) Gray also has a

social network and spends time talking with others on the phone and on the computer. (Id.) Further, Gray has never been laid off from a job because of problems getting along with other people. (Id.)

To be sure, there are cases in which a claimant's ability to engage in certain personal activities "does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." Ponder v. Colvin, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (citing Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). But that is not the case where, as here, the ALJ relied on more than just Gray's daily activity. Specifically, the ALJ also considered the lack of objective evidence to support the degree of limitation alleged (Tr. 28-30), the effectiveness of Gray's treatment measures when he was compliant with treatment (Tr. 28-29; 325), his lack of compliance with recommended treatment (Tr. 28; 450), and the opinion of Dr. Dunn, a state agency psychologist (Tr. 29; 363-373, 457). Because the ALJ's determination not to credit Gray's subjective complaints is supported by good reasons and substantial evidence, the Court defers to his determination. Cobb v. Colvin, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (internal citations omitted). See also Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

**C. Vocational Expert**

Finally, Gray asserts that the ALJ relied on flawed vocational expert testimony. Gray argues that the ALJ's RFC was based on improper consideration of the relevant medical opinions in the record and an incomplete evaluation of Gray's credibility. Gray additionally asserts that the ALJ failed to rely on a hypothetical question to the VE that accurately described all the mental limitations the ALJ conceded were documented by the record. Specifically, Gray argues that the ALJ found that Gray has moderate difficulties in concentration, persistence, or pace but

then only restricted Gray to unskilled work in her RFC determination and in the hypothetical the ALJ gave to the VE.

"To constitute substantial evidence, a hypothetical must set forth the impairments accepted as true by the ALJ." Brachtel v. Apfel, 132 F.3d 417, 421 (8th Cir. 1997). Gray cites to Newton v. Chater, 92 F.3d 688 (8th Cir. 1996) in support of his assertion that the ALJ must include Gray's deficiencies in concentration, persistence, or pace in her hypothetical to the VE. However, in this case, unlike in Newton, the credible evidence does not show Gray's deficiencies in concentration, persistence, or pace to be so limiting. In Newton, the claimant's deficiencies in concentration, persistence, and pace included:

> moderate deficiencies in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal work week, and perform at a consistent pace without an unreasonable number and length of rest periods[; and] marked [ ] limit[ations] in his ability to carry out detailed instructions[.]

(Id. at 695) Here, although the ALJ concluded that, "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties," in her RFC assessment, the ALJ limited Gray to the performance of unskilled work. (Tr. 24-25) In so-doing, the ALJ properly afforded little weight to the opinions of Dr. Barbin, Dr. Hill, and Ms. Coffman, and affording great weight to the state agency psychologist, Dr. Dunn. (Tr. 29-30) Dr. Dunn concluded that Gray did not have any limitation in maintaining concentration, persistence or pace. (Tr. 29, 371) As previously discussed, the ALJ also conducted a full review of the mental impairment medical evidence. (Tr. 24, 28-31) Moreover, the ALJ considered Gray's subjective complaints, including his alleged limitations regarding concentration, persistence, and pace, and found them not to be credible. (Tr. 27)

Accordingly, because substantial evidence shows Gray's limitations in concentration, persistence, or pace did not impose limitations beyond the performance of unskilled work, the ALJ did not err in her RFC determination or in her hypothetical to the vocational expert that included only this relevant limitation

### VI. Conclusion

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice.

A separate Judgment will accompany this Order.

Dated this 28th day of September, 2015.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**